John G. Balestriere*
Matthew W. Schmidt (Cal. Bar No. 302776)
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone:  (212) 374-5401
Facsimile:   (212) 208-2613
john.balestriere@balestrierefariello.com
matthew.schmidt@balestrierefariello.com
*Admitted Pro hac vice

Anastasia Mazzella (Cal. Bar. No. 245201)
**KABATECK LLP**
633 West Fifth Street, Suite 3200
Los Angeles, California 90071
Telephone: (213) 217-5007
Facsimile:   (213) 217-5010
am@kbklawyers.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JULIA HUBBARD, et al.,**<br><br>    Plaintiffs,<br><br>  –against–<br><br>**TRAMMELL S. CROW, JR., et al.,**<br><br>    Defendants. | Case No.: 2:22-cv-7957-FLA-MAA<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT MITCHELL'S MOTION TO DISMISS** |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 3

LEGAL STANDARD ............................................................................................................. 4

ARGUMENT .......................................................................................................................... 5

    I.    MITCHELL PURPOSEFULLY AVAILED HIMSELF OF CALIFORNIA JURISDICTION ........................................................................................................ 5

    II.    PLAINTIFFS' CLAIMS ALL ARISE OUT OF MITCHELL'S ACTIVITIES DIRECTED TO CALIFORNIA ............................................................................. 5

    III.    THE COURT SHOULD, AT A MINIMUM, ALLOW JURISDICTIONAL DISCOVERY AS TO MITCHELL ............................................................................ 6

    IV.    PLAINTIFFS HAVE ALLEGED THAT MITCHELL PARTICIPATED IN THE AFFAIRS OF THE ENTERPRISE ................................................................. 7

CONCLUSION ....................................................................................................................... 8

## **TABLE OF AUTHORITIES**

**Cases**

*Am. West Airlines, Inc. v. GPA Group, Ltd.*
    877 F.2d 793 (9th Cir. 1989)...................................................................................6

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ................................................................................................5

*Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*
    295 F. Supp. 3d 927 (N.D. Cal. 2018) ....................................................................7

*Doe v. Am. Nat'l Red Cross*
    112 F.3d 1048 (9th Cir. 1997)..............................................................................4, 6

*Gilligan v. Jamco Dev. Corp.*
    108 F. 3d 246 (9th Cir. 1997)...................................................................................4

*J.C. v. Choice Hotels Int'l, Inc.*
    No. 20-CV-00155-WHO, 2020 WL 6318707 (N.D. Cal. Oct. 28, 2020) ............4

*Kelmar v. Bank of Am. Corp.*
    No. CV 12-6826 PSG (EX), 2012 WL 12850425 (C.D. Cal. Oct. 26, 2012) .....7

*Lazar v. Kroncke*
    862 F.3d 1186 (9th Cir. 2017.)................................................................................5

*Odom v. Microsoft Corp.*
    486 F.3d 541, 553 (9th Cir. 2007)...........................................................................4

*Orchid Biosciences, Inc. v. St. Louis Univ.*
    198 F.R.D. 670 (S.D. Cal. 2001).............................................................................6

*Swierkiewicz v. Sorema N.A.*
    534 U.S. 506 (2002) ................................................................................................5

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*
    556 F.2d 406 (9th Cir. 1977)...................................................................................7

**Rules**

Fed. R. Civ. P. 8(a)(2) ................................................................................................ 4

Rule 12(b)(6) ............................................................................................................. 5

# PRELIMINARY STATEMENT[1]

Defendant Texas Ranger Cody Mitchell ("Mitchell"), with his co-conspirators, for years participated in a sex trafficking scheme (the "Venture") that unlawfully trafficked Plaintiffs Julia Hubbard ("Hubbard") and Kayla Goedinghaus ("Goedinghaus"), subjecting them to hundreds of forced commercial sex acts, as well as the beatings, threats, and forced use of medications needed to compel Hubbard and Goedinghaus to engage in such acts.

Mitchell provided crucial support for the Venture, compelling Plaintiffs to engage in forced commercial sex acts through threats of force and coercion making use of his status as not only a law enforcement officer, but also a member of the elite Texas Rangers Division. Making use of the Texas Rangers' reputation in Texas—featured in numerous television shows and movies, and nicknamed the "Texas Devils"—Mitchell would threaten Plaintiffs with abuse of legal process if they did not accede to all of the Venture's demands. And Mitchell was not simply a rank-and-file Ranger, but specialized in human trafficking and child exploitation cases and worked on high-profile cases, eventually being featured in a 2020 Showtime mini-series about one of his cases. This placed Mitchell in a uniquely privileged position to threaten and coerce Plaintiffs. As Mitchell knew, most would find the idea that a respected law enforcement offer specializing in human trafficking was *himself* engaged in a trafficking scheme absurd on its face. Yet, that is what Plaintiffs allege and have the evidence to prove.

Crucially, the psychological opinions of Defendant Dr. Benjamin Todd Eller ("Eller"), who claimed that Plaintiffs were his patients and mentally troubled, provided Mitchell with the assurances he needed to act with impunity. While a Ranger on his own may face scrutiny if accused of improper behavior, if those accusations came from women whom a highly-respected psychologist would

---

[1] All capitalized terms are defined in the Complaint, Dkt. No. 1 (the "Complaint" or "Compl."). Some terms are redefined herein for the Court's convenience.

1  describe as unwell, Mitchell faced no real threat of discovery. And knowing that he
2  was protected, Mitchell engaged in downright reckless abuses of power in order to
3  threaten and coerce Plaintiffs. On one occasion, this meant Mitchell taking a photo
4  in his patrol car of him holding his penis in one hand and an open bottle of Jack
5  Daniels whiskey in the other, which Defendant Richard Hubbard ("Rick Hubbard")
6  showed to Plaintiff Hubbard. The message of such a photo, which documented a law
7  enforcement officer committing multiple crimes, was direct: Mitchell, and thus the
8  Venture as a whole, was above the law. As Mitchell (an expert in human trafficking)
9  well knew, this was a particularly potent threat to vulnerable women such as
10 Plaintiffs, who feared that if they contacted law enforcement they would not be
11 believed.
12     Mitchell's intentional acts in support of the Venture meant purposefully
13 directing activities toward California, particularly due to the key role of Eller in not
14 only the Venture, but Mitchell's role in the Venture. No reasonable person in
15 Mitchell's situation would have participated in the Venture as he did—making threats
16 under the color of law that could easily risk his career if discovered—unless he had
17 further assurance of protection, as Eller provided. This gives rise to specific personal
18 jurisdiction in California over Mitchell. At a minimum, the court should allow
19 jurisdictional discovery into potential communications.
20     In addition to Mitchell's acts establishing jurisdiction in California, Mitchell's
21 acts also establish his participation in the sex trafficking Venture's and the
22 racketeering Enterprise's affairs, making him liable under both the sex trafficking
23 and Racketeering Influenced and Corrupt Organizations ("RICO") Act claims that
24 Plaintiffs plead. Mitchell challenges only his participation in the Enterprise's
25 racketeering acts, specifically that he did not "direct" the Enterprise's affairs. But the
26 RICO statute does not require that a defendant manage or even have "significant
27 control" over the Enterprise, only that the defendant had a sufficiently important
28 position in the "chain of command" such that they were "vital" to the Enterprise. As

Plaintiffs have alleged, Mitchell played a central role in the Enterprise, acting as its chief "bad cop" in order to both directly threaten and coerce Plaintiffs and assist Rick Hubbard and other Venture members in forcing, threatening, and coercing Plaintiffs. Mitchell's role in the Enterprise was not only vital, but it was also central.

The Court can and should properly exercise jurisdiction over Defendant Mitchell, find him properly liable for the racketeering activities of the Enterprise and deny his motion to dismiss on grounds of jurisdiction.

## STATEMENT OF FACTS

Plaintiff Hubbard married Defendant Rick Hubbard in February 2010. (Compl. ¶¶ 96–97.) Following an arrest later that year for financial fraud, Rick Hubbard became desperate for new financial opportunities. (Compl. ¶¶ 104–106.) Rick Hubbard then, along with Defendant Eller, and later, with key financing from Defendant Crow and his colleagues, formulated the Venture, which began to force Plaintiff Hubbard to perform sex acts for money. (Compl. ¶¶ 121–123.) The Venture forced Plaintiff Hubbard, through means that included Eller using his psychological practice, to claim that Hubbard had serious psychological issues and needed to be on high doses of drugs such as Xanax, Adderall, Oxycodone, Marinol, Soma, Lorezapan, Ambien, and Trazadone. (Compl. ¶¶ 123–24.) Certain of these drugs, when combined, are known as the "Holy Trinity" due to their potent effects when taken together. (Compl. ¶¶ 123–24.) This medication scheme made Plaintiff Hubbard, and, later, Plaintiff Goedinghaus—and likely others—pliable, and susceptible to other forms of threats and force. (*Id.*) Eller's contributions to the Venture also involved swearing false affidavits claiming that both Plaintiffs were seriously psychiatrically troubled persons under his care. (Compl. ¶¶ 8–12.)

Mitchell is, and at all relevant times was, a member of the Texas Rangers Division, an elite Texas statewide law enforcement agency. (Compl. ¶ 19.) In this role, Mitchell specialized in human trafficking and child exploitation cases. (*Id.*) Mitchell was also a close friend of Rick Hubbard, and Rick Hubbard informed

Mitchell "in detail" of the operations of the Venture. (Compl. ¶ 21.) Rick Hubbard also provided Mitchell with naked photos of both Plaintiff Hubbard and Plaintiff Goedinghaus. (*Id.*)

In exchange for both the naked photos and his continuing friendship with Rick Hubbard, Mitchell would use threats of legal process, allowing Rick Hubbard to tell Plaintiffs that if they did not comply with his demands, Mitchell would arrest Plaintiffs under false charges, and if Plaintiffs went to law enforcement, no one would believe them. (Compl. ¶ 20.) As part of this manipulative scheme, on one occasion Mitchell sent Rick Hubbard a photo of Mitchell in his police cruiser, holding his penis in one hand an open bottle of Jack Daniels whiskey in the other. (Compl. ¶ 22.) Mitchell sent this to Rick Hubbard with the intent that Rick Hubbard show it to Plaintiffs, as a message that Mitchell was ready to abuse his authority as a law enforcement official in order to assist the Venture. (*See* Compl. ¶ 22–23.)

## **LEGAL STANDARD**

A California court may exercise specific personal jurisdiction over a non-resident defendant where a plaintiff shows that he purposefully avails himself of the privilege of transacting business in California and that the claims against him arise from such purposeful availment, provided that the defendant cannot show that. *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1051 (9th Cir. 1997).

Federal Rule of Civil Procedure ("Rule") 8 requires that pleadings contain a "short and plain statement of the claim showing that the pleader is entitled to relief" and prevents courts from granting motions to dismiss absent exceptional circumstances. Fed. R. Civ. P. 8(a)(2); *Gilligan v. Jamco Dev. Corp.*, 108 F. 3d 246, 248 (9th Cir. 1997); *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-CV-00155-WHO, 2020 WL 6318707, at *10 (N.D. Cal. Oct. 28, 2020) (applying Rule 8 to TVPA claims). Claims of fraud, including those pleaded under RICO, require more specific pleading that identifies "the circumstances constituting fraud" with "particularity." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). However, non-fraudulent

elements of RICO, including a defendant's state of mind, may be "alleged generally." *Id.*

On a Rule 12(b)(6) motion, a court may dismiss a claim "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). In other words, a court may not dismiss a complaint in which Plaintiffs have alleged enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## ARGUMENT

### I. MITCHELL PURPOSEFULLY AVAILED HIMSELF OF CALIFORNIA JURISDICTION

Mitchell's key role in the Venture—as an enforcer who allowed Rick Hubbard and the Venture to more credibly threaten and coerce Plaintiffs into performing commercial sex acts—necessarily meant that he purposefully availed himself of California jurisdiction, making it proper for the Court to exercise specific personal jurisdiction over Mitchell. A defendant "purposefully avails" himself of a forum when he avails himself "of the privilege of conducting activities in the forum State, thus invoking the benefits and protections of its laws." *Lazar v. Kroncke*, 862 F.3d 1186, 1201–02 (9th Cir. 2017).

Mitchell purposefully availed himself of California jurisdiction through his participation in the Venture, in which Eller, residing in this District, played a central role. And not only did Mitchell participate in the Venture, but he did so through a close personal relationship with his "longtime friend" Rick Hubbard, the Venture's main contact with Santa Monica-based Dr. Eller. (*See* Compl. ¶ 19.) Specifically, Mitchell regularly spoke with Rick Hubbard through the "close friendship" between the two, and Mitchell went so far as to commit acts that could have had have significant career and legal consequences by sending to Rick Hubbard photos, to be used by the Venture to assist the threats and coercion to cause Plaintiffs to engage in

commercial sex acts. (*See* Compl. ¶¶ 19, 22.)

Given this close personal relationship, it is not only plausible, but almost certain that Mitchell knew of Eller's role of the Venture and made the conscious decision to purposefully avail himself of California jurisdiction by taking actions in support of the Venture.

## II. PLAINTIFFS' CLAIMS ALL ARISE OUT OF MITCHELL'S ACTIVITIES DIRECTED TO CALIFORNIA

Not only did Mitchell purposefully avail himself of California jurisdiction, but all of Plaintiffs' claims also arise out of those activities. Courts apply a "but for" causation test to determine "whether a plaintiff's injury arises out of a defendant's forum-related activities." *Am. Nat'l Red Cross*, 112 F.3d at 1051. Here, all of Plaintiffs' claims against Mitchell would not have occurred absent Eller: without Eller's work to cause Plaintiffs to be on debilitating doses of drugs, the Venture would not have been able to force Plaintiffs to engage in commercial sex acts. (*See* Compl. ¶¶ 121–24.) While Mitchell is responsible for his own wrongful actions towards Plaintiffs, had Mitchell not been involved the Venture would not have succeeded, and none of Plaintiffs' claims against Mitchell would have arisen. Plaintiffs' claims all arise, out of Mitchell's activities directed at this State.

## III. THE COURT SHOULD, AT A MINIMUM, ALLOW JURISDICTIONAL DISCOVERY AS TO MITCHELL

At a minimum, the Court should allow limited jurisdictional discovery into communications between Mitchell and Rick Hubbard as well as Mitchell's actual knowledge of Eller, his location, and his role in the Venture. Granting of jurisdictional discovery is within the sound discretion of the Court, and appropriate where "pertinent facts bearing on the question of jurisdiction are in dispute." *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 672 (S.D. Cal. 2001) (quoting *Am. West Airlines, Inc. v. GPA Group, Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989)). Such discovery is appropriate except where a Defendant can show that "it is clear that

further discovery would *not* demonstrate facts sufficient to constitute a basis for jurisdiction." *Id.* at 674 (emphasis added) (quoting *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)).

Here, the Court should respectfully find that it has personal jurisdiction over Mitchell, but, at a minimum—especially given the close relationship between Mitchell and Rick Hubbard—the Court should allow jurisdictional discovery into communications between Mitchell and Rick Hubbard and Mitchell's own knowledge of Eller, Eller's location in California, and Eller's central rule in the Venture.

## IV. PLAINTIFFS HAVE ALLEGED THAT MITCHELL PARTICIPATED IN THE AFFAIRS OF THE ENTERPRISE

Plaintiffs have also adequately pleaded that Mitchell participated in the affairs of the RICO Enterprise that harmed Plaintiffs. To show participation in a RICO enterprise, a Plaintiff must show that a defendant had a role in directing the affairs of the Enterprise *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 983 (N.D. Cal. 2018). In this context, "'directing' has a different meaning than is commonly understood" in daily usage, and does not require even "significant control" over the Enterprise. *Kelmar v. Bank of Am. Corp.*, No. CV 12-6826 PSG (EX), 2012 WL 12850425, at *7 (C.D. Cal. Oct. 26, 2012). Instead, this requirement is satisfied so long as the defendant had a sufficiently important role, taking into account their position in the "chain of command" of the Enterprise and whether their actions were "vital" to the Enterprise's success. *Id.*

Plaintiffs have pleaded exactly such a vital role to Mitchell's participation in the Enterprise. Plaintiffs have pleaded specific acts that Mitchell took in order to support the Venture, including sending Rick Hubbard a photo of Mitchell in a police cruiser while exposing himself and with an open bottle of alcohol for the express purpose of intimidating Plaintiffs. (*See* Compl. ¶ 22.) Mitchell, through his long friendship and regular communication with Rick Hubbard, knew and intended that these threats would be conveyed to Plaintiffs. (*See* Compl. ¶¶ 22, 23.) And as

Plaintiffs also pleaded, Mitchell's role constituted a defined role in the enterprise, as a so-called "Fixer" who worked closely with Rick Hubbard in order to support the Enterprise as a "bad cop" (literally and figuratively) who could assist in forcing Plaintiffs to comply with the Enterprise's demands.

## CONCLUSION

Mitchell knowingly participated in and benefitted from a sex trafficking scheme which he knew or should have known had a nexus in California, through Defendant Dr. Eller. Eller had a central role in the Venture, through providing access to key drugs that allowed Plaintiffs to be forced, threatened with force, and coerced by the Venture into performing commercial sex acts. And crucially, these potent drugs were such that a reasonable person in Mitchell's position would have made inquiries into their source upon observing Plaintiff Hubbard under their influence. In this way, Mitchell purposefully availed himself of the jurisdiction of California, and all of Plaintiffs' claims here arise from that availment.

Plaintiffs also pleaded that Mitchell participated in the Venture and had a defined role as a "fixer" and "bad cop" in the Enterprise, which allowed it to continue forcing, important threatening, and coercing Plaintiffs into performing commercial sex acts.

For these reasons, and all those other foregoing reasons, the Court should respectfully deny Mitchell's motion to dismiss, or at a minimum allow Plaintiffs jurisdiction discovery into Mitchell and his relevant knowledge of Eller.

Case No. 2:22-cv-7957-FLA-MAA
8

Dated: New York, New York
March 10, 2023

By: _____
Matthew W. Schmidt
John G. Balestriere*
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone:    (212) 374-5401
Facsimile:    (212) 208-2613
john.balestriere@balestrierefariello.com
matthew.schmidt@balestrierefariello.com
*Admitted Pro hac vice*

Anastasia Mazzella
**KABATECK LLP**
633 West Fifth Street, Suite 3200
Los Angeles, California 90071
Telephone:    (213) 217-5007
Facsimile:    (213) 217-5010
am@kbklawyers.com
*Attorneys for Plaintiffs*

**CERTIFICATION OF SERVICE**

The undersigned hereby certifies that on this date, the foregoing document filed electronically using the Court's CM/ECF System are served on counsel of record pursuant to the Federal Rules of Civil Procedure through the Court's Notice of Electronic Filing generated by the CM/ECF System, per L.R. 5–3.2.1.

Dated: New York, New York
March 10, 2023.

BALESTRIERE FARIELLO

By: _____

Matthew W. Schmidt

Attorney for Plaintiffs