Gerald E. Hawxhurst (Bar No. 220327)
  jerry@hawxhurstllp.com
Patrick B. Nichols (Bar No. 294389)
  pat@hawxhurstllp.com
Kyle Foltyn-Smith (Bar No. 307835)
  kyle@hawxhurstllp.com
HAWXHURST LLP
11111 Santa Monica Blvd., Suite 620
Los Angeles, California 90025
Telephone:   (310) 893-5150
Facsimile:   (310) 893-5195

Ken C. Stone (*pro hac vice*)
  kstone@grayreed.com
London England (*pro hac vice*)
  lengland@grayreed.com
GRAY REED & McGRAW LLP
1601 Elm St., Suite 4600
Dallas, Texas 75201
Telephone:  (214) 954-4135
Facsimile:   (214) 953-1332

Attorneys for Defendant Trammell S. Crow, Jr.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA HUBBARD, et al., | Case No. 2:22-cv-7957-FLA-MAA |
| Plaintiffs, | |
| v. | **DEFENDANT TRAMMELL S. CROW, JR.'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT** |
| TRAMMELL S. CROW, JR., et al., | |
| Defendants. | Date:         March 31, 2023<br>Time:         1:30 p.m.<br>Courtroom:  6B, 6th Floor |

# **Table of Contents**

Argument..................................................................................................1

   I.    THE COMPLAINT FAILS APPLICABLE PLEADING
        STANDARDS...............................................................................1

      A.   The Allegations Do Not Cross the Line From Possible to
           Probable. ........................................................................1

      B.   The Complaint Does Not Provide Defendants Individual
           Notice. ............................................................................4

   II.   PLAINTIFFS' CLAIMS FAIL FOR ADDITIONAL REASONS.........5

      A.   Plaintiffs Fail to Allege a Sex Trafficking Claim Against
           Mr. Crow..........................................................................5

          1.    No perpetrator liability. ......................................5

          2.    No beneficiary liability.......................................6

      B.   No Plausible Labor Trafficking Claim Against Mr. Crow...........7

      C.   Plaintiffs Do Not Allege a Cognizable 1962(c) Claim.................8

          1.    Plaintiffs lack RICO standing. ............................8

          2.    Plaintiffs' 1962(c) Claim Fails For Additional
              Reasons. ........................................................11

                 *a.*    *Failure to adequately allege a common*
                    *purpose.* ................................................11

                 *b.*    *Failure to allege a structure or continuing*
                    *unit.* ......................................................11

                 *c.*    *No pattern of racketeering.* ....................12

                 *d.*    *Mr. Crow did not "conduct" the alleged*
                      *enterprise.* ............................................13

      D.   Ms. Hubbard's RICO Claims are Barred by Statute of
           Limitations. ...................................................................14

      E.   The RICO Conspiracy Claim Still Fails. ...................................14

   III.   LEAVE TO AMEND SHOULD NOT BE GRANTED......................15

Conclusion..............................................................................................15

TRAMMELL S. CROW, JR.'S REPLY IN SUPPORT OF MOTION TO DISMISS

## <u>Table of Authorities</u>[1]

### <u>Cases</u>

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ...............................................................................passim

Atias v. Phillips,
2018 WL 11355475 (C.D. Cal. Dec. 7, 2018) .......................................8, 9, 14

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007) ..............................................................................2

Berg v. First State Ins. Co.,
915 F.2d 460 (9th Cir. 1990)................................................................9, 14

Boyle v. U.S.,
556 U.S. 938 (2009) ..............................................................................11, 12

Brown & Brown, Inc. v. Cola,
745 F. Supp. 2d 588 (E.D. Pa. 2010) ..................................................8

Bryant v. Mattel, Inc.,
573 F. Supp. 2d 1254 (C.D. Cal. 2007)................................................12

Cal. Grocers Ass'n v. City of Santa Ana,
2021 WL 4439092 (C.D. Cal. Jun. 20, 2021) ......................................11

Canyon Cnty. v. Syngenta Seeds, Inc.,
519 F.3d 969 (9th Cir. 2008)................................................................9

Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.,
235 F. Supp. 3d 1132 (E.D. Cal. 2017)................................................11, 12, 13

Destfino v. Reiswig,
630 F.3d 952 (9th Cir. 2011)................................................................4, 5

Diaz v. Gates,
420 F.3d 897 (9th Cir. 2005)................................................................9

Doe v. Fitzgerald,
2022 WL 2784805 (C.D. Cal. May 13, 2022) ......................................7

Doe v. Roe,
958 F.2d 763 (7th Cir. 1992)................................................................10

Does v. Reddit, Inc.,
51 F.4th 1137 (9th Cir.)........................................................................5, 6

---

[1] Unless stated otherwise, all emphasis is added and internal quotations and citations are omitted.

TRAMMELL S. CROW, JR.'S REPLY IN SUPPORT OF MOTION TO DISMISS

Eclectic Props. E., LLC v. Marcus & Millichap Co.,
    751 F.3d 990 (9th Cir. 2014) .................................................................... 3, 6, 10

Evans v. Az. Cardinals Football Club, LLC,
    761 Fed. Appx. 701 (2019) ........................................................................ 14

Geiss v. Weinstein Co. Holdings LLC,
    383 F. Supp. 3d 156 (S.D.N.Y. 2019) ........................................................ 6

Gomez v. GuthyRenker, LLC,
    2015 WL 4270042 (C.D. Cal. July 13, 2015) ............................................ 14

Howard v. Am. Online Inc.,
    208 F.3d 741 (9th Cir. 2000) ...................................................................... 15

Lesnik v. Eisenman SE,
    374 F. Supp. 3d 923 (N.D. Cal. 2019) ........................................................ 7

Odom v. Microsoft Corp.,
    486 F.3d 552 (9th Cir. 2007) ...................................................................... 11

Reves v. Ernst & Young,
    507 U.S. 170 (1993) .................................................................................... 13

RJ v. Cigna Health & Life Ins. Co.,
    2022 WL 4021890 (N.D. Cal. Sept. 2, 2022) ............................................. 13

Schneider v. Cal. Dep't of Corr.,
    151 F.3d 1194 (9th Cir. 1998) .................................................................... 10

Shulman v. Kaplan,
    2020 WL 7094063 (C.D. Cal. Oct. 29, 2020) .............................................. 9

Skye Orthobiologics, LLC v. CTM Biomedical, LLC,
    2021 WL 6102520 (C.D. Cal. Feb. 9, 2021) ............................................... 2

Sprewell v. Golden State Warriors,
    266 F.3d 979 (9th Cir. 2001) ........................................................................ 4

Standard v. Nygren,
    658 F.3d 792 (7th Cir. 2011) ..................................................................... 4, 5

State Farm Mut. Auto. Ins. v. Lee,
    193 Cal. App. 4th 34 (2011) ........................................................................ 8

Steckman v. Hart Brewing, Inc.,
    143 F.3d 1293 (9th Cir. 1998) ...................................................................... 3

Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.,
    368 F.3d 1053 (9th Cir. 2004) .................................................................... 15

Thompson v. Il. Dept. of Prof. Reg.,
    300 F.3d 750 (7th Cir. 2002) ........................................................................ 4

U.S. v. Cook,
    782 F.3d 983 (8th Cir. 2015) ........................................................................ 6

- iii -

U.S. v. Maneri,
    353 F.3d 165 (2d Cir. 2003) ............................................................... 7

U.S. v. Todd,
    627 F.3d 329 (9th Cir. 2010) ............................................................. 5

United States v. Lacey,
    2022 WL 4363818 (9th Cir. Sept. 21, 2022) ..................................... 9

**<u>Statutes</u>**

18 U.S.C. § 1589 .................................................................................... 7, 8

18 U.S.C. § 1591 .................................................................................... 2, 6

TRAMMELL S. CROW, JR.'S REPLY IN SUPPORT OF MOTION TO DISMISS

Plaintiffs do not plausibly allege a human-trafficking venture or RICO enterprise or, even if they did, that Mr. Crow is plausibly liable for human trafficking or participating in a RICO enterprise.  The Opposition ignores entirely the controlling plausibility standard.  To be sure, the standard is mentioned *once* in the 25-page Opposition (Opp'n (Dkt. 67) at 6), but Plaintiffs never attempt to show how their minimal and vague factual allegations plausibly support a conclusion that defendants participated in decade-long human trafficking and RICO conspiracies.

The Complaint tells a story of tragic domestic disfunction including divorces, public child custody battles, and public charges of domestic abuse among Plaintiffs, their ex-husbands and ex-boyfriends.  It is a story about Rick Hubbard's poor behavior and Plaintiffs' poor choices occurring years before meeting Mr. Crow and most other defendants.

The Opposition does not show how—under applicable legal standards—allegations concerning Plaintiffs' domestic strife spanning nearly a decade plausibly support their human trafficking and RICO conspiracy claims.  The Opposition simply repeats the shotgun-style "everyone did everything" allegations of the Complaint, along with fantastical allegations—where "happy birthday" texts and calendar reminders for doctor appointments are the alleged "evidence" of trafficking and RICO conspiracy—without ever showing how these allegations move Plaintiffs' claims from merely possible to being plausible, as the law requires in order to withstand Mr. Crow's Motion to Dismiss.  The Motion should be granted.

<u>**Argument**</u>

**I.**   **THE COMPLAINT FAILS APPLICABLE PLEADING STANDARDS**

   **A.**   **The Allegations Do Not Cross the Line From Possible to Probable.**

"Where a complaint pleads facts that are merely consistent with [plaintiffs' theories], it stops short of the line between possibility and plausibility."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  The motion to dismiss should be granted because the Complaint's factual allegations do not "raise a right to relief above a speculative

1  level"—they fail to cross the line from merely possible to being plausible.  <u>Bell Atl.</u>

2  <u>Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

3       The gist of the story alleged in the Complaint is that Plaintiffs had long-

4  running, dysfunctional relationships with their ex-husbands and ex-boyfriends

5  (defendants Sean Mayer, Richard Hubbard, Casey Grover, and Michael Hynes, Jr.).

6  As sad as that story is, allegations concerning persons who happened to interact with

7  Plaintiffs over the years do not convert their story of domestic disfunction into a

8  plausible human-trafficking venture or a RICO criminal enterprise.  <u>See</u> 18 U.S.C. §

9  1591 (trafficking requires assistance, support or facilitation of alleged venture);

10  <u>Skye Orthobiologics, LLC v. CTM Biomedical, LLC</u>, 2021 WL 6102520, *11 (C.D.

11  Cal. Feb. 9, 2021) (requiring "proof of a [criminal] enterprise separate and apart

12  from its alleged pattern of racketeering activity").

13       The Opposition does not explain how allegations concerning Plaintiffs' long-

14  running domestic troubles, drug abuse, and swinging plausibly support their human

15  trafficking and RICO theories.  Worse, Plaintiffs ask the Court to conclude that

16  obviously benign events, combined with lawyer-driven conclusions, plausibly allege

17  trafficking and RICO violations.  <u>Cf.</u> <u>Iqbal</u>, 556 U.S. at 664 (when determining

18  plausibility, courts must "draw on [their] experience and common sense").  For

19  instance, Plaintiffs would have the Court conclude that Mr. Hubbard's dinner

20  invitation to his then-wife, Ms. Hubbard, to join him at a public seminar at the Texas

21  Land & Cattle Company restaurant shows he was priming her for forced commercial

22  sex, especially when he writes that she was only "invited if Nanny will babysit [the]

23  kids."  (<u>See</u> Compl. (Dkt. 1) ¶ 166.)  The Opposition also points to Mr. Crow's and

24  Mrs. Hubbard's benign text messages and photos as "evidence" of sex trafficking

25  (Opp'n (Dkt. 67) at 5 (<u>citing</u> Compl. (Dkt. 1) ¶ 186)), but like the seminar invitation,

26  these allegations do not cross the line from possibly being consistent with Plaintiffs'

27  theories to being plausible.  As one other example, the Opposition argues that a

28  "Happy Birthday" Facebook message from one defendant to Ms. Hubbard supports

1    a conclusion that Ms. Hubbard was forced to have sex for money against her will.

2    (<u>See id.</u> (<u>citing</u> Compl. (Dkt. 1) ¶ 200).)  Lawyer argument and conclusory

3    allegations are not "facts that tend to exclude … innocuous alternative explanations"

4    for these events, <u>Eclectic Props. E., LLC v. Marcus & Millichap Co.</u>, 751 F.3d 990,

5    996 (9th Cir. 2014), or events that are more troubling, such as alleged physical

6    abuse by Plaintiffs' ex-husbands and ex-boyfriends.  (<u>E.g.</u>, Compl. (Dkt. 1) ¶¶ 2, 46,

7    161, 251.)  As terrible as the allegations of domestic abuse are, they do not rise to

8    the level of human trafficking or RICO claims against Mr. Crow.  See <u>Eclectic</u>

9    <u>Props. E., LLC</u>, 751 F.3d at 996 (plaintiffs must offer facts to exclude possibility

10   that an alternative explanation is true).

11           Plaintiffs ask the Court to conclude that Mr. Crow was essential to the so-

12   called "Venture" because he supposedly "structured his funding of the Venture as

13   'loans' to Rick Hubbard so that [Mr.] Crow would have some plausible deniability

14   in his essential role in the Venture," and that Mr. Hubbard "received information

15   from [Mr.] Crow's accountant on how to best structure loans to the [alleged]

16   Venture."  (<u>See</u> Opp'n (Dkt. 67) at 2, 6, 11.)  This story (such as it is), is foreclosed

17   by emails and other writings incorporated in the body of Plaintiffs' Complaint.  <u>See</u>

18   <u>Steckman v. Hart Brewing, Inc.</u>, 143 F.3d 1293, 1295-96 (9th Cir. 1998) (courts

19   "are not required to accept as true conclusory allegations which are contradicted by

20   documents referred to in the complaint").

21           For instance, the Complaint includes an email where Mr. Hubbard asks Mr.

22   Crow for a loan.  Plaintiffs argue that despite asking for a loan, Mr. Hubbard's email

23   was cryptically soliciting funding for the alleged RICO conspiracy.  This

24   "interpretation" is belied by the actual words of the email, which asks for a loan for

25   Mr. Hubbard to pay legal fees in a custody battle where his children were "in

26   danger."  (Compl. (Dkt. 1) ¶ 187; <u>see also id.</u> (quoting an email from Mr. Hubbard

27   to "papa" Jon Parsons (Ms. Hubbard's stepfather) explaining that Mr. Hubbard and

28   "Papa" would transfer shares in Mr. Parson's company to Mr. Crow as repayment

for the loan).)  Plaintiffs ask the Court to disregard the complete text of these writings, and to defer to the lawyers' conclusory allegation that the loan was "to the [alleged] Venture."  (See Opp'n (Dkt. 67) at 11.)  Allegations and argument that contradict what incorporated writings actually say cannot save a complaint from dismissal.  See Thompson v. Il. Dept. of Prof. Reg., 300 F.3d 750, 754 (7th Cir. 2002) (where contradiction exists, the incorporated writing "*trumps the allegations*" (emphasis in original)); Sprewell v. Golden State Warriors, 266 F.3d 979, 988-89 (9th Cir. 2001) (documents cited in complaint control over allegations); see also Iqbal, 556 U.S. at 664 (when determining plausibility, courts must "draw on [their] experience and common sense").

**B.     The Complaint Does Not Provide Defendants Individual Notice.**

"To form a defense, a defendant must know what he is defending against; that is, he must know the legal wrongs he is alleged to have committed and the factual allegations that form the core of the claims asserted against him."  Standard v. Nygren, 658 F.3d 792, 799-800 (7th Cir. 2011).  A complaint that does not meet this standard or that alleges that "everyone did everything" fails as a matter of law.  Id.; see also Destfino v. Reiswig, 630 F.3d 952, 958 (9th Cir. 2011) ("everyone did everything" allegations are insufficient).  The Opposition tries to fill fatal gaps in the Complaint by pointing to allegations of conduct by Plaintiffs' ex-boyfriends or ex-husbands followed by *conclusory* allegations that Mr. Crow (and other Defendants) were aware of or participated in whatever misdeeds Plaintiffs' exes are alleged to have done.  (See, e.g., Opp'n (Dkt. 67) at 10.)

As one example, the Opposition argues that the Complaint adequately alleges that Mr. Crow engaged in human-trafficking because they "specifically pleaded" that "money and other things of value were exchanged for sex acts," and that this conclusory allegation is made "plausible" by citation to 14 other allegations.  (Opp'n (Dkt. 67) at 11 (citing Compl. (Dkt. 1) ¶¶ 40, 48, 142, 195, 199, 220-27, 237, 286).)  In fact, the cited paragraphs do not mention Mr. Crow at all.

TRAMMELL S. CROW, JR.'S REPLY IN SUPPORT OF MOTION TO DISMISS

1      The Complaint does not plausibly allege any claim against Mr. Crow and

2  should be dismissed as against him.  See Destfino, 630 F.3d at 958; see also

3  Standard, 658 F.3d at 799-800; Iqbal, 556 U.S. at 678.

4  **II.     PLAINTIFFS' CLAIMS FAIL FOR ADDITIONAL REASONS**

5      **A.     Plaintiffs Fail to Allege a Sex Trafficking Claim Against Mr. Crow.**

6            **1.     No perpetrator liability.**

7      Plaintiffs argue that Mr. Crow "obtained," "enticed," "harbored," "provided,"

8  "maintained," "patronized," and "solicited" Plaintiffs, knowing that prohibited

9  means would be used to cause a commercial sex act.  (See Opp'n (Dkt. 67) at 8.)

10  Plaintiffs' theory (such as it is) is this:  because *Mr. Hubbard* was allegedly an

11  abusive domestic partner, and because Mr. Crow allegedly saw Ms. Hubbard have

12  sex with another person, Mr. Crow must have known that Mr. Hubbard was

13  trafficking his wife (and later Ms. Goedinghaus).  (Id. at 9-10.)  Plaintiffs do not cite

14  to any allegations that could plausibly tie Mr. Hubbard's alleged misconduct to Mr.

15  Crow's actions or plans.  Plaintiffs were required to allege facts plausibly showing

16  that Mr. Crow had an awareness that "if things go as he ha[d] planned, force, fraud

17  or coercion will be employed to cause his victim to engage in a commercial sex

18  transaction."  U.S. v. Todd, 627 F.3d 329, 334 (9th Cir. 2010).  They do not do so.

19      The only allegation purporting to show Mr. Crow was informed of alleged

20  domestic abuse is that Ms. Hubbard "told [Mr.] Crow that [Mr. Hubbard] was

21  forcing her to perform sex acts and forcing her to take drugs to induce such acts."

22  (See Opp'n (Dkt. 67) at 12.)  The allegation, if taken as true, shows that Mr. Crow

23  was made aware of domestic abuse; it does not plausibly show that Mr. Crow knew

24  of, let alone participated in, an alleged trafficking or RICO enterprise.[2]  The

25  allegation that Ms. Hubbard told Mr. Crow that her husband physically abused her

26  does not plausibly show that Mr. Crow was a participant in the alleged scheme.  See

27  Does v. Reddit, Inc., 51 F.4th 1137, 1145 (9th Cir.) (association with sex traffickers

28

---

[2] There are no allegations that Mr. Crow knew of Ms. Goedinghaus's alleged abuse.

TRAMMELL S. CROW, JR.'S REPLY IN SUPPORT OF MOTION TO DISMISS

1    insufficient absent knowing participation); <u>see</u> <u>also</u> <u>Geiss v. Weinstein Co. Holdings</u>

2    <u>LLC</u>, 383 F. Supp. 3d 156, 169 n.5 (S.D.N.Y. 2019) (hush payments to cover up sex

3    trafficking does not trigger TVPA liability).

4            **2.      No beneficiary liability.**

5            Plaintiffs first argue they "have alleged that [Mr.] Crow [participated in the

6    Venture by] provid[ing] financial support to the Venture as well as provid[ing] the

7    primary forum for the Venture's Forced Sex Parties."  (Opp'n (Dkt. 67) at 13.)  As

8    shown above, allegations that Mr. Crow "financially supported" the alleged

9    trafficking venture are foreclosed by documents incorporated in the Complaint.

10   (<u>See</u> <u>supra</u> I.A.)  Plaintiffs' argument they had sex with their boyfriends, husbands

11   or other persons while at Mr. Crow's home (Opp'n (Dkt. 67) at 11-12) does not

12   plausibly support a conclusion that Mr. Crow "benefited" from the alleged scheme.

13   Even if taken as true, the allegation is more consistent with Plaintiffs having

14   consensual sex at his home than a trafficking scheme.  <u>See</u> <u>Reddit, Inc.</u>, 51 F.4th at

15   1145; <u>see</u> <u>also</u> <u>Eclectic Props. E., LLC</u>, 751 F.3d at 996 ("plaintiffs cannot offer

16   allegations that are merely consistent with their favored explanation but are also

17   consistent with the alternative explanation").

18          Plaintiffs next argue that because they allege Mr. Crow "received multiple

19   things of value from Plaintiffs," they have plausibly alleged beneficiary liability.

20   (Opp'n (Dkt. 67) at 13-14 (<u>citing</u> Compl. ¶¶ 319-20).)  However, the Complaint

21   does not identify any "thing of value" or benefit (except alleged voyeurism) that was

22   received by Mr. Crow as a *quid pro quo* for his alleged participation in the Venture.

23   Allegations that Mr. Crow (along with others) watched Plaintiffs have sex cannot

24   give rise to beneficiary liability.  <u>See</u> 18 U.S.C. § 1591(e); <u>Reddit, Inc.</u>, 51 F.4th at

25   1145 ("knowingly benefit" means "benefit financially" or receive an actual "thing of

26   value").  Plaintiffs' argument that a "sexual act" or an "opportunity for a sexual

27   encounter" is a "thing of value" under the TVPA (Opp'n (Dkt. 67) at 13-14) is

28   misplaced.  The case relied on, <u>U.S. v. Cook</u>, 782 F.3d 983, 989 (8th Cir. 2015), is

                                        - 6 -

inapposite. <u>Cook</u> involved live-streamed sadistic torture transmitted to and by criminal defendant Cook. The court found that Cook "clearly attached value" to the sexual acts because he *traded* his own videos, photographs, and advice *quid pro quo* for the torturer's online live-streams. <u>Id.</u> at 986, 989. Here, there are no allegations remotely similar to <u>Cook</u>.[3] Plaintiffs do not plausibly allege that Mr. Crow participated in the Venture or exchanged any "thing of value" as a result of his alleged participation. The trafficking claims against Mr. Crow should be dismissed. <u>See</u> <u>Doe v. Fitzgerald</u>, 2022 WL 2784805, at *5 (C.D. Cal. May 13, 2022).

### B.   No Plausible Labor Trafficking Claim Against Mr. Crow.

Plaintiffs were required to plead facts that plausibly show that Mr. Crow knowingly provided or obtained Plaintiffs' labor by means of force, threats of force, or abuse of the legal process. <u>See</u> 18 U.S.C. § 1589(a). Only Mr. Hubbard, Grover, Hynes, Jr. (Plaintiffs' ex-boyfriends and husbands) and Ranger Mitchell are alleged to have used force or threats of harm against Plaintiffs. (Opp'n (Dkt. 67) at 16 (<u>citing</u> Compl. (Dkt. 1) ¶¶ 46, 273).) In contrast, Plaintiffs make conclusory allegations that Mr. Crow must have known about the allegations against these other persons. (<u>See</u>, <u>e.g.</u>, Compl. (Dkt. 1) ¶¶ 31 (Mr. Crow "knew full well" details of abuse); 36 (Ms. Hubbard told Mr. Crow of her husband's abuse).) These allegations are insufficient to plausibly charge Mr. Crow with knowledge of a trafficking scheme. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do").

The Opposition resorts to a strained argument that Mr. Crow somehow "engaged in threats" because, according to the Complaint, Mr. Juracek allegedly

---

[3] Plaintiffs' other cases (Opp'n (Dkt. 67) at 13) are also inapposite. <u>Lesnik v. Eisenman SE</u>, 374 F. Supp. 3d 923, 953 (N.D. Cal. 2019) involved an offer of employment as a "thing of value"; here there are no allegations that Mr. Crow traded employment as a condition for watching Plaintiffs have sex. <u>U.S. v. Maneri</u>, 353 F.3d 165, 168-70 (2d Cir. 2003) is a 20-year-old case involving an anti-child pornography statute where the court found that the pornographic child photos exchanged for sex were "things of value."

TRAMMELL S. CROW, JR.'S REPLY IN SUPPORT OF MOTION TO DISMISS

"threatened Hubbard with his testimony in court that could have [her] children taken away from her." (Compl. (Dkt. 1) ¶ 211.)  The allegations concerning Mr. Juracek's alleged comment, even if assumed as true, do not show any actual threat (and certainly none made by Mr. Crow).  By Ms. Hubbard's own allegations, she was hardly fit to have custody of her children.  (See, e.g., Compl. (Dkt. 1) ¶¶ 96 (describing Ms. Hubbard's ongoing custody fights with Mayer); 108-12 (Ms. Hubbard voluntarily attending sex-swap parties); 127 (describing Ms. Hubbard's recreational drug use); 167 (describing Ms. Hubbard's career as a stripper beginning no later than 2009).)

Second, an alleged "threat" to give testimony in a pending judicial proceeding is not an *abuse of process*.  See 18 U.S.C. § 1589(a) (abuse requires use of process in a manner or for a purpose "which the law was not designed"); State Farm Mut. Auto. Ins. v. Lee, 193 Cal. App. 4th 34, 40 (2011) (abuse of process requires the actual use of legal process in wrongful manner).  Third, there are no allegations that Mr. Crow knew of or had any influence over Mr. Juracek's alleged willingness to testify in the Hubbards' child custody battle.  (See Mot. (Dkt. 26) at 6 n.6.)  The labor trafficking claim against Mr. Crow fails.[4]

### C.    Plaintiffs Do Not Allege a Cognizable 1962(c) Claim.

#### 1.    Plaintiffs lack RICO standing.

To have standing, a RICO Plaintiff must allege, among other things, an injury to her own "business or property interests."  Atias v. Phillips, 2018 WL 11355475, *3-4 (C.D. Cal. Dec. 7, 2018).  The Opposition argues that Plaintiffs allege three injuries caused by a RICO violation: (1) lost "moneys earned [in exchange] for companionship," (2) Grover's withholding of wages supposedly earned by working at a strip club, and (3) repossession of Ms. Hubbard's home.  (Opp'n (Dkt. 67) at

---

[4] The labor trafficking claim against Mr. Crow fails for the same reasons the sex trafficking claim fails.  See Brown & Brown, Inc. v. Cola, 745 F. Supp. 2d 588, 626 (E.D. Pa. 2010) (dismissing claim because it was "subsumed into" another claim).

TRAMMELL S. CROW, JR.'S REPLY IN SUPPORT OF MOTION TO DISMISS

17-18.)  These are not cognizable RICO injuries.  See <u>Canyon Cnty. v. Syngenta Seeds, Inc.</u>, 519 F.3d 969, 975 (9th Cir. 2008) (RICO requires a "concrete financial loss" *caused* by a RICO violation).

First, Plaintiffs' "lost-money-in-exchange-for-companionship" theory has no support in the law.  The case they cite concerns prostitutes where the "pimp" kept the *prostitutes'* "earnings."[5]  See <u>United States v. Lacey</u>, 2022 WL 4363818, at *1 (9th Cir. Sept. 21, 2022) ("The indictment recognizes that escort services are lawful, but goes on to allege that the vast majority of advertisements for escort services on Backpage were thinly-veiled prostitution ads.").  The allegations here are that "[Mr.] Hubbard forced [Plaintiffs] ... to perform sex acts for payment [to him], which payments he retained."  (See Compl. (Dkt. 1) ¶¶ 3, 312.)  Plaintiffs do not allege they were prostitutes who expected pay for sex; they allege that Mr. Hubbard "sold" them to third parties without their consent (or, in some cases, knowledge).  (See <u>id.</u>)  Whatever claim these allegations might support *against Mr. Hubbard*, they do not support standing to allege a RICO claim *against Mr. Crow*.  See <u>Atias</u>, 2018 WL 11355475, at *3-4 (no standing where "plaintiffs [did] not allege[] that defendant's conduct interfered with existing economic relationships from which plaintiffs could readily expect to derive benefit"); see also <u>Shulman v. Kaplan</u>, 2020 WL 7094063, at *2 (C.D. Cal. Oct. 29, 2020) (injuries to illegal businesses are not redressable under civil RICO).

---

[5] Plaintiffs cite <u>Diaz v. Gates</u>, 420 F.3d 897 (9th Cir. 2005) for the proposition that a personal injury can constitute "business or property" loss within the meaning of RICO.  (Opp'n (Dkt. 67) at 17.)  To the extent it could be read that way, <u>Diaz</u> does not confer RICO standing to every personal injury claim that results in lost wages.  See <u>Diaz</u>, 420 F.3d at 900.  <u>Diaz</u> explains that RICO standing exists *only* where the loss arises out of a business or property interest as defined by state law.  <u>Id.</u>  Cases that do apply hold that personal injury does not satisfy RICO's "business or property" requirement.  See <u>Atias</u>, 2018 WL 11355475 at *3-4; <u>Berg v. First State Ins. Co.</u>, 915 F.2d 460, 463 (9th Cir. 1990).

TRAMMELL S. CROW, JR.'S REPLY IN SUPPORT OF MOTION TO DISMISS

Second, Ms. Hubbard's argument that Grover withheld a portion of her stripper pay for his own benefit "with the remainder to the benefit of the Venture" (Opp'n (Dkt. 67) at 18) is *not an allegation actually in the Complaint*, and therefore cannot defeat dismissal as to Ms. Hubbard (Goedinghaus has no such allegation). See Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (deficient pleading cannot be cured in response to a motion to dismiss). Again, the Complaint alleges something entirely different: that "Grover forced [Ms.] Hubbard to work at the Cabaret, confiscating a portion of her wages *for his personal benefit*." (Compl. (Dkt. 1) ¶ 45.)[6]

Third, the argument that the supposed RICO enterprise led to the foreclosure of Ms. Hubbard's home in April 2018 due to "the confiscation of her wages" by Grover (Opp'n (Dkt. 67) at 18) is not plausibly supported by her Complaint, and therefore cannot be considered. See Schneider, 151 F.3d at 1197 n.1. Again, Plaintiffs allege that Grover confiscated Ms. Hubbard's "wages *for his personal benefit*" when dancing at the Cabaret. (Compl. (Dkt. 1) ¶ 45.)

Fourth, Ms. Hubbard's home was allegedly foreclosed months *after* she quit the Cabaret. (Id. ¶¶ 257, 265.) By her own allegations, it is more plausible that the foreclosure was caused by Mr. Hubbard's intervening months of unemployment than Grover's alleged confiscation of wages months prior. See Eclectic Properties, 751 F.3d at 996 ("When considering plausibility, courts must also consider an "obvious alternative explanation" for defendant's behavior"); cf. Doe v. Roe, 958 F.2d 763, 766 (7th Cir. 1992) (no standing where alleged financial injury is derivative of injuries not cognizable under RICO). Because they have not alleged a plausible injury to their "business or property," Plaintiffs lack RICO standing.

---

[6] The parts of the Complaint which Plaintiffs argue support their new theory do no such thing. (See Opp'n (Dkt. 67) at 18 (citing Compl. (Dkt. 1) ¶¶ 44 (identifying other Cabaret managers), 250 (alleging only that Grover withheld her wages), 312 (legal conclusion that Plaintiffs incurred damages)).)

TRAMMELL S. CROW, JR.'S REPLY IN SUPPORT OF MOTION TO DISMISS

### 2.    Plaintiffs' 1962(c) Claim Fails For Additional Reasons.

#### a.  Failure to adequately allege a common purpose.

Mr. Crow's moving papers demonstrated why the Complaint does not plausibly allege the "common purpose" requirement.  (Mot. (Dkt. 26) 18-19.)  To do so, Plaintiffs must allege a plausible "common purpose and course of conduct" among Defendants.  See Boyle v. U.S., 556 U.S. 938, 950 (2009).  They have not done so.  (See, e.g., Compl. (Dkt. 1) ¶¶ 146 (alleging doctor's goal of personal profit), 250 (Grover's goal to keep Ms. Hubbard's wages for himself), 269 (Hynes, Jr.'s goal of selling drugs with Ms. Hubbard's assistance for his personal benefit).) The Opposition merely repeats the insufficient, conclusory allegations of the Complaint.  That is, that Defendants acted with the "common purpose" to "traffic women," without pointing to any specific factual allegations that plausibly support their conclusions.  (Compare Opp'n (Dkt. 67) at 19, with Compl. (Dkt. 1) ¶¶ 341.) Their failure to plead facts establishing a plausible "common purpose" dooms their RICO claims.  See Odom v. Microsoft Corp., 486 F.3d 552, 547 (9th Cir. 2007) (plaintiffs must show members acted to further *a common*, unlawful purpose).

#### b.  Failure to allege a structure or continuing unit.

Plaintiffs also do not allege a cognizable RICO organization or that Defendants acted as a continuing RICO enterprise.  (Mot. (Dkt. 26) at 19-20.)  The Opposition does not contest Mr. Crow's showing that the Complaint does not sufficiently allege any organizational structure, and therefore concedes this issue. Cal. Grocers Ass'n v. City of Santa Ana, 2021 WL 4439092, *2 (C.D. Cal. Jun. 20, 2021) (failure to respond to arguments concedes them); see also Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp., 235 F. Supp. 3d 1132, 1175 (E.D. Cal. 2017) (failure to allege RICO structure where there were no "specific facts as to the nature of the connection between defendants").

Plaintiffs try to argue that there is a "continuing unit" because the alleged illegal conduct took place over several years (see Opp'n (Dkt. 67) at 21), but this

TRAMMELL S. CROW, JR.'S REPLY IN SUPPORT OF MOTION TO DISMISS

argument misses the point.  To show a plausible "continuing unit" Plaintiffs must allege facts showing that the predicate acts were connected to the alleged RICO enterprise, as opposed to illegal conduct that would otherwise occur outside a RICO conspiracy.  See Bryant v. Mattel, Inc., 573 F. Supp. 2d 1254, 1263 (C.D. Cal. 2007) ("The 'continuing unit' requirement . . . is related to the notion that RICO was not meant to address discrete instances of fraud or criminal conduct."); Comm. to Protect our Agric. Water, 235 F. Supp. 3d at 1175 (no RICO enterprise based on disconnected illegal conduct among supposed RICO members).  The Complaint describes long running, disconnected domestic disputes between Plaintiffs and their ex-husbands and ex-boyfriends, along with alleged occasional interactions with Mr. Crow and others.  The intermittent appearance of other defendants over the years is insufficient to allege a plausible RICO enterprise.  See Boyle v. U.S., 556 U.S. 938, 947 n.4.

### c.  No pattern of racketeering.

The Complaint also fails to allege the factual basis for any predicate acts as to Mr. Crow.  (Mot. (Dkt. 26) at 21.)  The Opposition lists dozens of paragraphs of the Complaint, which they argue "plead[] numerous related predicate acts (at least two of which accrue to Crow)."  (Opp'n (Dkt. 67) at 22.)  These paragraphs show nothing of the sort; they either concern other defendants or do not concern purported predicate acts.[7]  Plaintiffs have not alleged specific predicate acts by Mr. Crow.  See RJ v. Cigna Health & Life Ins. Co., 2022 WL 4021890, at *5 (N.D. Cal. Sept. 2, 2022) ("plaintiff must allege at least two predicate acts *by each defendant*"); Occidental Oil, 235 F. Supp. 3d at 1178 ("[absent] supporting factual allegations,"

---

[7] As just one example, Plaintiffs cite paragraph 134, which concerns one of several domestic court cases between Mr. and Ms. Hubbard.  It has nothing to do with Mr. Crow.  This is another example of Plaintiffs' reliance on improper "everyone did everything" allegations.  (See supra I.B.)  To the extent any of the cited paragraphs relate to Mr. Crow, they are either unsupported legal conclusions, irrelevant, or concern their sex trafficking allegations, which fail as a matter of law.

1  general allegations of wrongful conduct do not "plausibly allege[] predicate

2  offenses").  The RICO claim fails as to Mr. Crow.

3                  *d.  Mr. Crow did not "conduct" the alleged enterprise.*

4          The Complaint does not allege facts plausibly showing that Mr. Crow

5  conducted or participated in the supposed enterprise's affairs.  (Mot. (Dkt. 26) at 22-

6  23.)  The Opposition simply argues that Mr. Crow "had a central role … where his

7  direction was obeyed," without citing to any supporting factual allegation in the

8  Complaint.  (Opp'n (Dkt. 67) at 22.)  Plaintiffs' reliance on their unsupported

9  conclusion that Mr. Crow was "the key financial supporter of the enterprise" (id.

10  (citing Compl. (Dkt. 1) ¶ 30)) is insufficient because there are no factual allegations

11  showing that Mr. Crow gave any direction concerning the supposed enterprise or

12  that his "direction was obeyed" by anyone.  See Reves v. Ernst & Young, 507 U.S.

13  170 (1993) (plaintiff must show how each defendant participated in the conduct of

14  the alleged enterprise's affairs).

15          Plaintiffs attempt to "amend" the Complaint by arguing that Mr. Crow was

16  the "primary host" of the so-called Forced Sex Parties.  (Opp'n (Dkt. 67) at 23

17  (citing Compl. (Dkt. 1) ¶¶ 37-40).)  The paragraphs cited do not allege that Mr.

18  Crow was the "primary host" of any sex party; in fact, the Complaint identifies only

19  two times that Plaintiffs had sex at Mr. Crow's residence (and never with Mr.

20  Crow).  (See Compl. (Dkt. 1) ¶¶ 34, 295.)  Even then, there are no allegations that

21  plausibly show that Mr. Crow had a central role in the alleged sexual goings-on.

22  (See, e.g., Compl. (Dkt. 1) ¶¶ 193, 215, 226, 297 (alleging that forced sex occurred

23  at Mr. Hubbard's home, sex clubs, and Rogers' home).  Conclusory allegations that

24  Mr. Crow was a "central figure" because he was allegedly present two times

25  Plaintiffs had sex with their exes or girlfriends are insufficient as a matter of law.

26  Cf. Gomez v. GuthyRenker, LLC, 2015 WL 4270042, at *5 (C.D. Cal. July 13,

27  2015) ("Since Business is merely a consumer of Provider's services, Business

28  cannot be said to participate in the operation or management of Provider").

**D.    Ms. Hubbard's RICO Claims are Barred by Statute of Limitations.**

The face of the Complaint establishes that Ms. Hubbard's RICO claims are barred by the four-year statute of limitations.  <u>Evans v. Az. Cardinals Football Club, LLC</u>, 761 Fed. Appx. 701, 703 (2019).  Ms. Hubbard alleges that the latest date she suffered a "concrete financial loss" was April 2018, the date her house went into foreclosure.  (Mot. (Dkt. 26) at 23-34.)  Putting aside that her foreclosure is not a cognizable RICO injury (<u>see</u> <u>supra</u> II.C.1), if it were, that injury occurred more than four years *before* Ms. Hubbard filed the Complaint.

The Opposition argues that Hynes, Jr.'s alleged physical abuse extends the limitations period beyond the date of foreclosure (Opp'n (Dkt. 67) at 24), but that argument fails for several reasons.  First, the Complaint alleges Ms. Hubbard "escaped" Mr. Hubbard's alleged trafficking venture in "March 2017" (well before the alleged foreclosure), and escaped Hynes, Jr. in "October or … November 2018" (over four years prior to this action).  (Compl. (Dkt. 1) ¶¶ 247, 265, 277).

Second, as explained in part II.C.1, Ms. Hubbard must allege facts showing a cognizable RICO injury.  A financial injury that flows from personal injury (allegedly inflicted by Grover or Hynes, Jr.) is not a cognizable RICO injury.  <u>See</u> <u>Berg</u>, 915 F.2d at 463; <u>see also</u> <u>Atias</u>, 2018 WL 11355475, at *3.

Third, Ms. Hubbard does not plausibly allege that Hynes, Jr.'s domestic abuse was in furtherance of any criminal enterprise (rather, she alleges it occurred in connection with their romantic relationship).  Nor does she allege that Hynes, Jr.'s alleged abuse "interfered with existing economic relationships from which [Ms. Hubbard] could readily expect to derive benefit" (<u>id.</u> at *4)—at the time of the alleged abuse she had no job or prospects of any jobs at the time.  (Compl. (Dkt. No. 1) ¶¶ 257, 265-268.)  Ms. Hubbard's claims are barred by the statute of limitations.

**E.    The RICO Conspiracy Claim Still Fails.**

Plaintiffs' RICO conspiracy claim under section 1962(d) fails because it is predicated on their section 1962(c) claim, which fails.  <u>Howard v. Am. Online Inc.,</u>

208 F.3d 741, 751 (9th Cir. 2000) (if a section 1962(c) claim does not state an action upon which relief could granted, the section 1962(d) claim "cannot be entertained"). (See Mot. (Dkt. 26) at 24-25; supra II.C., II.D.)

## III.    LEAVE TO AMEND SHOULD NOT BE GRANTED

Plaintiffs should not be permitted to amend because they have not shown how their proposed amendments would cure the Complaint's several infirmities.  Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc., 368 F.3d 1053, 1061 (9th Cir. 2004) (dismissal with prejudice where party failed to show *how* amendments would cure pleading deficiencies).  Plaintiffs argue that they can allege further facts to show, for example, how Ms. Hubbard suffered RICO damages as late as December 2018 (Opp'n (Dkt. 67) at 24), but they do not explain how the proposed new allegations (i.e., that Hynes Jr. did not return Ms. Hubbard's driver's license until December 2018) would cure their pleading deficiencies such that, in this example, Ms. Hubbard's claims would not be barred by the statute of limitations.  Leave to amend should be denied.

### Conclusion

Mr. Crow respectfully requests that the Court dismiss the Complaint with prejudice.

DATED:  March 10, 2023                    HAWXHURST LLP
                                          GRAY REED & McGRAW LLP


                                   By_____
                                          Gerald E. Hawxhurst
                                          Kenneth Stone

                                          *Attorneys for Defendant*
                                          *Trammell S. Crow, Jr.*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Trammell S. Crow, Jr., certifies that this brief contains 15 pages, which complies with the page limit set by the Court's Initial Standing Order in this case, dated December 5, 2022 (Dkt. 24).

DATED:  March 10, 2023                    GRAY REED & McGRAW LLP
                                          HAWXHURST LLP

By_____
Gerald E. Hawxhurst
Kenneth Stone

*Attorneys for Defendant*
*Trammell S. Crow, Jr.*